IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| MARIA N. VINSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:12-cv-1088-MEF |
| | ) | (WO – Do Not Publish) |
| KOCH FOODS OF ALABAMA, LLC, | ) | |
| *et al.,* | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

This case arises from a suit brought by Plaintiff Maria N. Vinson ("Vinson") against

Defendants Koch Foods of Alabama, LLC ("Koch-Ala") and Koch Foods, LLC ("Koch")

(collectively, "Defendants") for unlawful employment discrimination.  Before the Court is

Defendants' Partial Motion to Dismiss (Doc. #8).  For the reasons discussed herein,

Defendants' Motion is due to be GRANTED IN PART and DENIED IN PART.

## I.  JURISDICTION AND VENUE

This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §§

1331, 1343(a), and 1367.  Additionally, Defendants have not argued that the Court does not

have personal jurisdiction over them.  Venue is appropriate pursuant to 28 U.S.C. § 1391.

## II. STANDARD OF REVIEW

In considering a Rule 12(b)(6) motion to dismiss, the court accepts the plaintiff's

allegations as true and reads them in the light most favorable to the plaintiff.  *Duke v.*

*Cleland*, 5 F.3d 1399, 1402 (11th Cir. 1993) (citation omitted). Further, a district court must favor the plaintiff with "all reasonable inferences from the allegations in the complaint." *Stephens v. Dep't of Health and Human Servs.*, 901 F.2d 1571, 1573 (11th Cir. 1990).

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). A complaint states a facially plausible claim for relief "when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint does not state a facially plausible claim for relief if it shows only "a sheer possibility that the defendant acted unlawfully." *Id.* While a complaint need not contain detailed factual allegations to survive a Rule 12(b)(6) motion, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.* (internal quotation and citations omitted). Absent the necessary factual allegations, "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" will not suffice. *Id.* Courts are also not "bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

### III. FACTUAL AND PROCEDURAL BACKGROUND

Since this case is before the Court on a motion to dismiss, the Court accepts the following allegations as true: Vinson is a Hispanic female and her national origin is Puerto Rican. (Doc. #1, ¶ 12.) Vinson has an Associate's Degree in Arts and Communication and a Bachelor of Science in Human Resource Management. (Doc. #1, ¶ 13.) Vinson is also a

2

U.S. Veteran and served in the Army, National Guard and Reserves, and was Honorably Discharged.  (Doc. #1, ¶ 13.)  Koch Foods owns and operates facilities at which it kills, processes, and packages chicken and byproducts, and it licenses Koch-Ala to use the name of "Koch Foods" for its Alabama operations.  (Doc. #1, ¶ 6.)  In October of 2009, Vinson took a position as an Orientation Trainer in the Human Resource ("HR") department at the Montgomery chicken processing facility of Koch-Ala.  (Doc. #1, ¶¶ 4–6, 14.)

During the course of her employment, Vinson applied for the position of Professional Development and Training.  (Doc. #1, ¶ 15.)  Lindsey Johnson, a white female, was hired for the position despite Vinson being more qualified and experienced.  (Doc. #1, ¶ 15.)  Vinson again applied for the position of Professional Development and Training, but the position was filled by Mason Melton, a white male who was less qualified than Vinson.  (Doc. #1, 15.)  An unposted night HR manager position later became available, and it was filled by a white male who had no HR experience.  (Doc. #1, ¶ 15.)  White males were also selected for other unposted positions.  (Doc. #1, ¶ 16.)

On January 5, 2012, Vinson was one of three employees (two white females and Vinson) who were suspended for taking too long of a break off the clock.  (Doc. #1, ¶ 17.)  The two white female employees were allowed to return to work on the fourth day, but Vinson was not allowed to return to work until the fifth day.  (Doc. #1, ¶ 18.)  When Vinson returned to work, her supervisor, David Birchfield ("Birchfield"), changed her job duties but not her job title.  (Doc. #1, ¶¶ 4, 19.)  This resulted in Vinson having no work station, no work tools, and no job description.  (Doc. #1, ¶ 20.)  Vinson was also removed from the

3

decisionmaking process of the HR department, which was a significant change in her responsibilities from what they were prior to her suspension. (Doc. #1, ¶ 22.) The two suspended white female employees retained their original job duties and later received promotions. (Doc. #1, ¶ 21.) One of the suspended white female employees was promoted to HR Generalist, a position that resulted in an increase in pay. (Doc. #1, ¶ 21.) White HR employees and male employees were paid more than Vinson. (Doc. #1, 21.)

On May 17, 2012, Vinson was told that her position as Trainer/HR Clerk was eliminated, and she was terminated. (Doc. #1, ¶¶ 23–24.) At the time of Vinson's termination, there was an open, unposted HR clerk position for which a male of a different race and national origin was selected. (Doc. #1, ¶ 25.) On June 20, 2012, Vinson filed a charge of discrimination with the Equal Opportunity Employment Commission ("EEOC") that reads in its entirety as follows:

> I am Hispanic and my national origin is Puerto Rican. I was hired by the above named employer in October 2009, as an Orientation Trainer. On January 5, 2012, I was one of three employees suspended for taking to [sic] long of a break, while off of the clock. The two White employees were allowed to return to work on the fourth day. I was not allowed to return to work until the fifth day. When I returned to work from the suspension, Mr. Burchfield [sic] changed my job duties, but I kept the same job title. The change in my job duties resulted in the elimination of my work station, so therefore I had no tools to work with. The two White employees who were suspended with me retained all of their job duties. The White employees kept their work stations. I was taken completely out of the decision making process, which I had before being suspended. I was discharged on May 17, 2012, without any advance notice or written warning.

4

> Howard Melton, Manager, told me that my job was not meeting expectations and the job were [sic] being eliminated.
>
> I believe that I was discriminated against because of my race, Hispanic and my national origin, Puerto Rican, in violation of Title VII of the Civil Rights Act of 1964, as amended.  Non-Hispanic employees have been granted job accommodations regardless of the availability of positions and they have given been [sic] preferential treatment in the work place.

(Doc. #1-1.)  On September 20, 2012, the EEOC issued a right-to-sue letter in which it stated that it was unable to conclude that the information obtained from its investigation established a violation of Title VII.  (Doc. #1-2.)

Vinson initiated this action with a complaint alleging racial discrimination and retaliation under 42 U.S.C. § 1981 (Count 1), national origin discrimination under Title VII (Count 2), and gender discrimination under Title VII (Count 3).  (Doc. #1.)  Vinson's § 1981 and Title VII claims are premised on unlawful termination, failure to promote, and unequal pay.  (Doc. #1, ¶¶ 30–33; 39; 44–46.)  Vinson also asserts state law claims for negligent and wanton hiring/supervision (Count 4), invasion of privacy (Count 5), and intentional infliction of emotional distress (Count 6).  (Doc. #1.)

Defendants now seek to dismiss the following claims: (1) the § 1981 retaliation and racial discrimination claim to the extent it is based on discriminatory pay as alleged in Count 1; (2) any Title VII claims based on retaliation, discriminatory pay, and discriminatory promotion as alleged in Counts 2 and 3; (3) any failure to promote claim, whether brought under § 1981 or Title VII, to the extent those claims stem from any position other than the position of Professional Development and Training as referenced in paragraph 15 of the

complaint; (4) all claims for gender discrimination asserted in Count 3; (5) any purported claim for hostile work environment under Title VII or § 1981; and (6) the state law claims for invasion of privacy, intentional infliction of emotional distress, and negligent and wanton hiring, training, supervision and retention as alleged in Counts 4, 5, and 6.[1]  (Doc. #8.)

## IV. DISCUSSION

Defendants' grounds for dismissal can be divided into two categories.   First, Defendants argue that Vinson has failed to adequately plead her claims for retaliation, hostile work environment, and all of her state law claims.  (Doc. #9.)  Defendants further argue that Vinson has failed to adequately plead any § 1981 or Title VII claim based on discriminatory pay or failure to promote (excluding any failure to promote claim based on the Professional Development and Training position referenced in paragraph 15 of the complaint).  Second, Defendants argue that Vinson has failed to exhaust her administrative remedies for Title VII claims of gender discrimination and national origin discrimination based on failure to promote or discriminatory pay.  (Doc. #9.)  The Court will consider Defendants' grounds for dismissal as it applies to each Count in Vinson's complaint.

---

[1]  Defendants do not move to dismiss Vinson's § 1981 racial discrimination claim to the extent it is based on her alleged wrongful termination and failure to promote her to the Professional Development and Training position.  Nor do they move to dismiss Vinson's Title VII national origin discrimination claim to the extent it is based on Vinson's alleged wrongful termination.

**A.      Rule 12(b)(6) Dismissal**

**1. § 1981 Retaliation and Discrimination Claims (Count 1)**

**a. Discriminatory Pay**

Vinson has asserted a race discrimination claim under § 1981 based on, among other things, discriminatory pay.  (Doc. #1, ¶¶ 31.)  To establish a prima facie disparate pay case under § 1981, a plaintiff must demonstrate that she held a position similar to that of a higher paid employee who is not a member of her protected class.  *Crawford v. Carroll*, 529 F.3d 961, 974–75 (11th Cir. 2008) (citing *Meeks v. Computer Assocs. Int'l*, 15 F.3d 1013, 1019 (11th Cir. 1994)).  To establish that she held a position similar to that of the comparator, a plaintiff must prove that she "shared the same type of tasks" as the comparator.  *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1529 (11th Cir. 1992).

In her complaint, Vinson alleges only that "[w]hite employees in Human Resources were paid substantially more than Plaintiff."  (Doc. #1, ¶ 21.)  This allegation is the precise type of "formulaic recitation of the elements of a cause of action" that will not suffice under *Twombly/Iqbal*.  *See Iqbal*, 556 U.S. 678; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Vinson's own complaint references different positions in the Human Resources department at the Koch facility that paid more money than hers, such as the Professional Development Training position, the night HR manager position, and the HR Generalist position.  (Doc. # 1, ¶¶ 15, 21.)  Yet Vinson does not allege which positions held by the white HR employees paid more than hers.  Nor does she allege that any of these employees "shared the same type of tasks" as her or provide any other factual basis to support her discriminatory

pay allegations. *See Miranda*, 957 F.2d at 1529. As it stands, Vinson's allegations are "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" that do not rise above the speculative level. *Iqbal*, 556 U.S. at 678; s*ee also Sherrod v. Prairie View A & M Univ.*, No. H-10-1858, 2011 WL 843936, at *9 (S.D. Tex. Mar. 8, 2011) (holding that complaint stating plaintiff received lower wages "as compared to male employees performing similar work" in same university division failed to state a cause of action under Title VII because no facts were alleged tending to show similarity of work); *Williams v. N.Y.C. Health & Hosp. Corp.*, No. 08-cv-4132, 2010 WL 2836356, at *4 (E.D.N.Y. July 16, 2010) (holding that complaint stating "[u]pon information and belief, males got paid when they were out sick but females were not" fell "far short of that which is required to state a claim for pay discrimination under Title VII"). Therefore, Defendants' motion to dismiss Vinson's § 1981 claim to the extent it is based on disparate pay is due to be GRANTED.

### b. Failure to Promote

Defendants do not seek dismissal of Vinson's § 1981 claim to the extent it is based on a failure to promote her to the Professional Development and Training position. (Doc. #8.) They do, however, seek dismissal of her § 1981 claim to the extent it is based on a failure to promote Vinson to any other position. (Doc. #8.) This would include Vinson's failure to receive the night HR manager position referenced in paragraph 15 of her complaint and "[o]ther vacancies" referenced in paragraph 16 of her complaint.[2] (Doc. #1.) Defendants

---

[2] The Court does not construe Vinson's statement that another employee received a promotion to HR Generalist in paragraph 21 of her complaint as a separate instance of a

argue that Vinson does not allege: (1) that she applied for these positions, (2) that Defendants knew she had any interest in these jobs, or (3) that she was more qualified than the applicants who received these positions; therefore, Defendants claim that Vinson has failed to adequately plead a § 1981 claim based on a failure to promote to either of these positions. (Doc. #9; Doc. #12.)

To establish a prima facie case for failure to promote, a plaintiff must show: (1) that the plaintiff belongs to a protected class; (2) that she applied for and was qualified for a promotion; (3) that she was rejected despite her qualifications; and (4) that other equally or less-qualified employees outside her class were promoted. *Brown v. Ala. Dept. of Transp.*, 597 F.3d 1160, 1174 (11th Cir. 2010). A plaintiff makes out a prima facie case as long as she establishes that the company had some reason or duty to consider her for the post. *Carmichael v. Birmingham Saw Works*, 738 F.2d 1126, 1133 (11th Cir. 1984). However, when a plaintiff has no notice or opportunity to apply for a job, such a reason by an employer for rejection is legally insufficient and illegitimate. *Id.* at 1133–34 (internal quotations and citations omitted). Beginning with the night HR manager position, Vinson alleges that the position was unposted and was filled with a white male who had no HR experience. (Doc. #1, ¶ 15.) The Court finds this allegation is sufficient to state a failure to promote claim for the night HR manager position. Under *Carmichael*, Vinson need not allege that she applied for the position because it was unposted, and Defendants had reason to know of her interest

discriminatory failure to promote, but rather as evidence of disparate treatment arising from a disciplinary action.

in the position based on her two past unsuccessful applications for promotions within the HR department. Further, Vinson adequately alleges that the successful applicant was less qualified when she states he had no HR experience.

However, the Court finds that Vinson's failure to promote claim based on "[o]ther vacancies," which were not posted and filled by white males, is too vague. If Vinson was aware that white males "were hand selected for open positions that were never posted so Plaintiff could [not] apply," then she should specify which positions those were, as she did for the Professional Development and Training and night HR manager positions. (Doc. #1, ¶¶ 15–16.) *See Davis v. Coca-Cola Bottling Co.*, 516 F.3d 955, 974 (11th Cir. 2008) (stating plaintiffs' claim that they were "'denied promotions . . . and treated differently than similarly situated white employees solely because of [] race' . . . epitomizes speculation and therefore does not amount to a short and plain statement of their claim under Rule 8(a)") (citation omitted). Accordingly, Defendants' motion to dismiss is DENIED to the extent Vinson's § 1981 failure to promote claim is based on the night HR manager position as referenced in paragraph 15 of her complaint, but GRANTED to the extent her § 1981 failure to promote claim is based on any "[o]ther vacancies" referenced in paragraph 16 of her complaint.

### c. Retaliation

Defendants move to dismiss Vinson's § 1981 retaliation claim. (Doc. #8.) To establish a claim of retaliation under § 1981, a plaintiff must prove: (1) that she engaged in statutorily protected activity; (2) that she suffered a materially adverse action; and (3) that there was some causal relation between the two events. *Goldsmith v. Bagby Elevator Co.*,

513 F.3d 1261, 1277 (11th Cir. 2008). In her complaint, Vinson alleges only that "[a]fter voicing complaints about the adverse treatment, Plaintiff incurred unlawful retaliation." (Doc. #1, ¶ 31.) Vinson does not allege, however, that she voiced complaints in opposition to Defendants' racially motivated adverse employment actions. (Doc. #1, ¶ 31.) For instance, there is no allegation that Vinson challenged her disparate disciplinary treatment, removal of work station and tools, and removal of job duties as racially motivated. In other words, there are no specific allegations of Vinson "voicing complaints" about any adverse employment action based on her race. A § 1981 retaliation claim requires the plaintiff to allege she suffered an adverse action as a result of opposition to the employer's unlawful racial discrimination. *See Andrews v. Lakeshore Rehab. Hosp.*, 140 F.3d 1405, 1412–13 (11th Cir. 1998); *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1007 (11th Cir. 1997). Since Vinson has not alleged Defendants' retaliation was based on her engagement in statutorily protected activity, their motion to dismiss Vinson's § 1981 retaliation claim is due to be GRANTED.

### 2.    Title VII National Origin Claim

Defendants move to dismiss Vinson's Title VII claims purportedly premised on discriminatory pay, retaliation, and failure to promote on the grounds that they exceed the scope of Vinson's EEOC charge. (Doc. #9.) However, the Court finds that there is a more serious problem with Vinson's pleading, which must be addressed first. It is unclear from Count 2 of Vinson's complaint whether her national origin claim is based solely on her wrongful termination, or if it is also based on discriminatory pay, failure to promote, and

retaliation.  Paragraphs 36 through 41 of Count 2 allege only unlawful termination based on national origin.  (Doc. #1.)  In her response brief, Vinson appears to assume that Count 2 includes claims for discriminatory pay, failure to promote, and retaliation by arguing that her EEOC charge contained sufficient facts to support all three claims.  (Doc. #4.)  But the allegations in Count 2 make no reference to these claims.

Vinson may not rely on paragraph 36 of Count 2 of her complaint, which re-alleges and incorporates by reference all previous allegations, to provide a sufficient factual basis for a Title VII national origin claim based on discriminatory pay, failure to promote, and retaliation.  This is classic "shotgun pleading" that prevents the Court and Defendants from being able to ascertain, with any certainty, which factual allegations support Vinson's national origin discrimination claim.  *See Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996); *Wagner v. Horizon Pharm. Corp.*, 464 F.3d 1273, 1279 (11th Cir. 2006) (citation omitted) ("Shotgun pleadings are those that incorporate every antecedent allegation by reference into each subsequent claim for relief or affirmative defense.").  Shotgun pleadings "wreak havoc on the judicial system" by failing to properly narrow the issues to meritorious claims and defenses and limit the scope of discovery, and will not be permitted by this Court.  *Byrne v. Nezhat*, 261 F.3d 1075, 1130–32 (11th Cir. 2001).

In any event, most of the general allegations incorporated by reference in paragraph 36 of Count 2 are immaterial to the claims for relief.  *See Johnson Enters. of Jacksonville, Inc. v. FPL Grp., Inc.*, 162 F.3d 1290, 1333 (11th Cir. 1998).  Vinson makes no mention that

12

any discriminatory pay, failure to promote, or retaliation she may have been subjected to was based on or motivated by her national origin.  Nor does she provide any factual basis to support such a claim.  Thus, even if the Court were to consider the allegations incorporated by reference into paragraph 36 of the complaint, Vinson's national origin claim would still fail to meet minimum pleading standards to the extent it is premised on discriminatory pay, failure to promote, or retaliation and, therefore, is due to be dismissed.[3]  As a result, Defendants' motion to dismiss this claim, to the extent it is based on discriminatory pay, retaliation, and failure to promote, is GRANTED.

### 3.      Hostile Work Environment Claims

Although not explicitly alleged in Vinson's complaint, Defendants move to dismiss any potential claims for hostile work environment.  (Doc. #9.)  Vinson responds that she is not asserting a hostile work environment claim under either Title VII or § 1981.  Therefore, Defendants' motion to dismiss Vinson's hostile work environment claims is due to be DENIED AS MOOT.

---

[3] District courts have the power and the duty to define the issues at the earliest stages of the litigation.  *Johnson*, 162 F.3d at 1333.  In shotgun pleading cases, courts have inherent authority to require a party to provide a more definite statement under Federal Rule of Civil Procedure 12(e).  *Fikes v. City of Daphne*, 79 F.3d 1079, 1083 n. 6 (11th Cir. 1996).  In this case, however, the Court finds that ordering Vinson to provide a more definite statement under Rule 12(e) for Count 2 of her complaint would be futile because, as discussed below, any claims she might add based on discriminatory pay, failure to promote, and retaliation are barred for failure to exhaust her administrative remedies.  Since Vinson did not include factual allegations of discriminatory pay, failure to promote, and retaliation in her EEOC charge, it would be futile for Vinson to amend her complaint to add such allegations to Count 2.  *See infra* Section B.

13

4.      **State Law Claims**

a. **Invasion of Privacy Claim (Count 5)**

Alabama recognizes four distinct theories of invasion of privacy: (1) the intrusion upon the plaintiff's physical solitude or seclusion; (2) publicity which violates the ordinary decencies; (3) putting the plaintiff in a false, but not necessarily defamatory, position in the public eye; (4) the appropriation of some element of the plaintiff's personality for a commercial use. *Phillips v. Smalley Maint. Servs., Inc.*, 435 So. 2d 705, 708 (Ala. 1983). Vinson argues that she has pled sufficient facts to support claims for invasion of privacy under the publicity and false light theories. (Doc. #11.) In support of her invasion of privacy claims, Vinson refers to Defendants' discriminatory change in her job duties, elimination of her work station and deprivation of tools, and removal from the decisionmaking process, which she claims resulted in "embarrassment, humiliation, and loss of reputation." (Doc. #11.) Vinson further states that this treatment "was known to her co-workers," although this is nowhere alleged in her complaint. (Doc. #11.)

To establish a claim for publicity that violates ordinary decencies, a plaintiff must show that the defendant gives publicity to a matter concerning the plaintiff's private life that (a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public. *Johnston v. Fuller*, 706 So. 2d 700, 703 (Ala. 1997) (quoting Restatement (Second) of Torts § 652D (1977)). The 'publicity' required for this tort is different from the mere 'publication' involved in defamation and requires that the matter is revealed to "the public at large, or to so many persons that the matter must be regarded as substantially certain

14

to become one of public knowledge." *Id.* (quoting Restatement (Second) of Torts § 652D cmt. a).  Vinson does not allege that any offensive matters were communicated to the public at large.  Rather, she attempts to convert her co-workers' awareness of Defendants' adverse employment actions towards her into "publicity" that violates ordinary human decencies. But awareness on the part of a small number of co-workers is insufficient to state a claim for the tort of publicity that violates ordinary decencies.  *See Ex parte Birmingham News, Inc.*, 778 So. 2d 814, 818–19 (Ala. 2000) (finding insufficient publicity where co-workers and supervisors were told about plaintiff suffering act of sexual harassment because dissemination of this information was either necessary to investigation or was only "to a small group of people"); *Johnston*, 706 So. 2d at 703 (holding no publicity involved in circulation of memorandum containing stigmatizing information about plaintiff because the defendants "did not broadcast over the radio" the harmful information or "print it in a newspaper" or "tell it to a large number of people").  Therefore, Vinson does not allege sufficient facts to establish that Defendants publicized matters that violate ordinary decencies.

A defendant tortiously gives publicity to a matter putting the plaintiff in a false light if (a) the false light in which the plaintiff was placed would be highly offensive to a reasonable person, and (b) the defendant had knowledge of or acted with reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.  *Regions Bank v. Plott*, 897 So. 2d 239, 244 (Ala. 2004) (quoting Restatement (Second) of Torts § 652E (1977)).  The "publicity" required for false light is the same

widespread publicity as that required for giving publicity to matters that violate ordinary decencies. *See* Restatement (Second of Torts) § 652E cmt. a (1977). Further, falsity is an element of the plaintiff's claim on which the plaintiff bears the burden of proof. *Regions Bank*, 897 So. 2d at 244. Vinson has not pled sufficient facts to state a cause of action for false light because she does not plead that false representations were publicized to a large number of people or even the necessary element of falsity. Vinson pleads only that Defendants took a series of adverse employment actions against her and that her co-workers were aware of these actions. (Doc. #11.) She does not state any facts that would establish Defendants placed her in a false light. Since Vinson has not pled sufficient facts to state a cause of action for either theory of invasion of privacy she advances, Defendants' motion to dismiss Vinson's invasion of privacy claim as alleged in Count 5 of her complaint is due to be GRANTED.

### b.  Negligent and Wanton Hiring, Training, Supervision, and Retention Claim (Count 4)

Vinson asserts a negligent hiring/supervision claim against Defendants based on their alleged failure to train and to supervise managers to prevent unlawful discrimination. (Doc. #1, ¶¶ 49–54.) To establish a negligent or wanton supervision and training claim, a plaintiff must show that: (1) the employee committed a tort recognized under Alabama law; (2) the employer knew or should have known of the tortious act; and (3) the employer negligently or wantonly disregarded the employee's incompetence. *Armstrong Bus. Servs., Inc. v. AmSouth Bank*, 817 So. 2d 665, 682 (Ala. 2001); *Stevenson v. Precision Standard, Inc.*, 762

So. 820, 824 (Ala. 1999).  Vinson argues that the first element of her negligent supervision claim is based on Defendants committing the tort of invasion of privacy.  (Doc. #11.) However, the Court has already found that Vinson failed to allege sufficient facts to state a cause of action for invasion of privacy.  Therefore, Vinson's claim for negligent supervision, which cannot proceed without the separate, underlying tort of invasion of privacy, is also due to be dismissed.  As a result, Defendants' motion to dismiss Vinson's claim for negligent supervision as alleged in Count 4 of her complaint is due to be GRANTED.

### c.  Intentional Infliction of Emotional Distress Claim (Count 6)

Vinson lastly asserts a claim for intentional infliction of emotional distress ("IIED") based on Defendants' unlawful employment discrimination against her.  (Doc. #1, ¶¶ 60–67.) To prevail on a claim for IIED, a plaintiff must establish that the defendant's conduct was (1) intentional or reckless; (2) extreme and outrageous; and (3) caused emotional distress so severe that no reasonable person could be expected to endure it.  *Harrelson v. R.J.*, 882 So. 2d 317, 322 (Ala. 2003) (quoting *Thomas v. BSE Indus. Contractors, Inc.*, 624 So. 2d 1041, 1043 (Ala. 1993)).  Conduct is extreme and outrageous only if it goes "beyond all possible bounds of decency" so as to be "regarded as atrocious and utterly intolerable in a civilized society."  *Baker v. State Farm Gen. Ins. Co.*, 585 So. 2d 804, 807 (Ala. 1991) (citation omitted).  Under Alabama law, IIED is a "very limited cause of action that is available only in the most egregious circumstances."  *Thomas,* 624 So. 2d at 1044.  Typically, these egregious circumstances involve wrongful conduct in the context of family burials, insurance agents employing "heavy handed, barbaric means" in coercing an insurance settlement, and

17

"egregious sexual harassment." *Id.*

Vinson acknowledges she must meet a "high threshold of proof," but cites several cases involving plaintiffs who state a cause of action for IIED in the employment context. *See Rice v. United Ins. Co. of Am.*, 465 So. 2d 1100 (Ala. 1984); *Cunningham v. Dabbs*, 703 So. 2d 979 (Ala. Civ. App. 1997). In *Rice*, the Court held that the plaintiff alleged a cause of action for IIED where her employer put pressure on her husband to take disability leave rather than work throughout her pregnancy, falsely accused her of incompetence in the presence of co-workers and clients, ridiculed her on numerous occasions, withheld vital business information from her, and eventually terminated her. 465 So. 2d at 1101–02. Moreover, the *Cunningham* court reversed summary judgment in favor of the defendants where the plaintiff employee was subjected to repeated lewd comments and unwanted physical contact, including her employer sticking his tongue in her ear, and characterized *Rice* as involving allegations of "a pattern of harassment that lasted for several months." 703 So. 2d at 980–81, 983. These cases, however, are distinguishable from the present case because, as Vinson admits, they involved plaintiffs who were "subjected to a protracted pattern of flagrant discrimination or retaliation." (Doc. #11.)

Vinson has not alleged a pattern of discrimination, but rather discrete acts of disparate treatment based on discipline, lost promotions, unequal pay, and her eventual termination. Vinson does not allege that she was harassed or publicly humiliated as were the plaintiffs in *Rice* and *Cunningham*. Nor does she plead the kind of "egregious sexual harassment" necessary to state a cause of action for IIED under Alabama law. *Thomas,* 624 So. 2d at

18

1044.  Therefore, Defendants' motion to dismiss Vinson's claim for IIED as alleged in Count

6 of her complaint is due to be GRANTED.

**B.      Administrative Exhaustion**

**1.      Title VII National Origin Claim (Count 2)**

Title VII requires plaintiffs to exhaust certain administrative remedies before filing

a suit for employment discrimination.  *See EEOC v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265,

1271 (11th Cir. 2002).  A plaintiff must first file a timely charge of discrimination with the

EEOC before bringing suit, and a judicial complaint is limited by the scope of the EEOC

investigation that can reasonably be expected to grow out of the charge of discrimination.

*See Alexander v. Fulton Cnty., Ga.*, 207 F.3d 1303, 1332 (11th Cir. 2000), *overruled on other*

*grounds by Manders v. Lee*, 338 F.3d 1304, 1328 n. 52 (11th Cir. 2003).  Additional judicial

claims are allowed if they amplify, clarify, or more clearly focus the allegations in the EEOC

complaint, but allegations of new acts of discrimination are inappropriate.  *Gregory v. Ga.*

*Dep't of Human Res.*, 355 F.3d 1277, 1279–80 (11th Cir. 2004) (per curiam) (internal

quotations and citations omitted).  The allegations in a judicial complaint must be "like or

related to" the allegations contained in the EEOC charge.  *Sanchez v. Standard Brands, Inc.*,

431 F.2d 455, 466 (5th Cir. 1970).

The "crucial element of a charge of discrimination is the factual statement contained

therein."  *Sanchez*, 431 F.2d at 462.  The factual statements contained in Vinson's EEOC

charge are confined to a narrow time frame and a narrow set of issues.  *See Green v. Elixir*

*Indus., Inc.*, 152 F. App'x 838 (11th Cir. 2005) (per curiam) (using the time frame for

19

discriminatory conduct specified in plaintiff's EEOC charge as a factor in holding the charged lacked allegations of retaliation).  Vinson lists in her charge the earliest date that discrimination took place as January 5, 2012, and the latest date as May 17, 2012.  Vinson was suspended along with two other white employees on January 5, and she was terminated on May 17.  The factual statements in the EEOC charge focus on Vinson's disparate treatment in the January 5 suspension, the removal of her work station and job duties, and the eventual elimination of her position and termination.  Vinson makes no mention of Defendants' discriminatory failure to promote her to any position, disparities in pay, or retaliation of any kind.  These claims cannot "reasonably be expected to grow out of the charge of discrimination" because they are outside the time frame of the alleged discriminatory conduct and are a completely different type of conduct.  *See Alexander*, 207 F.3d 1332.

In support of her argument, Vinson cites *Gregory v. Georgia Department of Human Resources*, a case in which the plaintiff was allowed to pursue a retaliation claim for opposing alleged race and sex discrimination despite failing to explicitly mention retaliation in her EEOC charge.  355 F.3d at 1280.  *Gregory* is distinguishable for several reasons. First, the duration of the alleged discrimination in *Gregory* encompassed the plaintiff's entire employment period, beginning with her initial training period.  *Id*. at 1279.  Here, Vinson had been working for Defendants since October 2009 but states the earliest date of discrimination was January 5, 2012–the date of her suspension–and the latest date was her termination on May 17, 2012.  Vinson's allegations encompass only the limited time period involving the

disciplinary action and its consequences.  Second, as the Eleventh Circuit has stated in another case, "the facts in [the *Gregory* plaintiff's] EEOC charge indicated she was fired after complaining about race and gender discrimination, which reasonably would lead to an EEOC investigation of retaliation." *Hillemann v. Univ. of Cent. Fla.*, 167 F. App'x 747, 749 (11th Cir. 2006) (per curiam).  In  Vinson's case, the facts in her EEOC charge make no mention of discriminatory pay, failure to promote, or retaliation, but instead focus on the January 5, 2012 disciplinary action and its consequences. *See id.* (holding newly-added failure to promote claims were procedurally barred where EEOC charge mentioned only two positions but judicial complaint mentioned fifteen positions).  Therefore, Vinson's Title VII national origin claim cannot be premised on claims for discriminatory pay, failure to promote, or retaliation because these allegations cannot reasonably be expected to grow out of her EEOC.  As a result, Vinson is procedurally barred from pursuing her Title VII national origin claim on any basis other than her wrongful termination.  Thus, Defendants' motion to dismiss Vinson's Title VII claim as alleged in Count 2 of the complaint is GRANTED to the extent that claim is based on discriminatory pay, failure to promote, or retaliation.

### 2.    Gender Discrimination (Count 3)

Defendants argue that Vinson's EEOC complaint makes no mention of gender discrimination.  (Doc. #9, 5.)  The factual statements in the charge clearly establish that Vinson raises only claims of race and national origin discrimination.  She states: "I am Hispanic and my national origin is Puerto Rican."  (Doc. #1-1.)  She does not state her gender, although this fact is easily inferred from her name.  Vinson states that the "two White

employees" who were disciplined with her were allowed to return to work one day earlier than her, but these two white employees were both women. (Doc. #1, ¶¶ 17–21.) The charge goes on at length about the disparate disciplinary treatment of Vinson and the other two white employees. Vinson states that her work station was taken and job functions removed, whereas the other two white employees kept their work stations, and that she was eventually terminated. However, Vinson does not state that male employees were punished less severely than her or that male employees received preferential treatment over her. If anything, Vinson's factual statements suggest disparate treatment between Hispanic and non-Hispanic employees rather than different genders.

Vinson's allegations of gender discrimination in her judicial complaint do not "amplify, clarify, or more clearly focus the allegations in the EEOC complaint," but instead inappropriately introduce new acts of discrimination. *Gregory*, 355 F.3d 1279–80. Vinson states in her own words that she believed she was discriminated against on the basis of race and national origin. The gender discrimination allegations in the judicial complaint are not "like or related to" the factual statements in the EEOC charge, which concern only race and national origin. *Sanchez*, 431 F.2d at 466; *see also Gregory*, 355 F.3d at 1280 (stating EEOC would have investigated possible reasons for plaintiff's termination "growing from her initial 'belief' [expressed in her EEOC charge] that it was because of her race *and* sex") (emphasis added); *Chanda v. Engelhard/ICC*, 234 F.3d 1219, 1224–25 (11th Cir. 2000) (holding plaintiff's national origin discrimination claim administratively barred where plaintiff mentioned only disability discrimination in his EEOC charge). Since a complaint for gender

22

discrimination cannot be reasonably expected to grow out of an investigation into Vinson's EEOC charge, her claims for gender discrimination are procedurally barred. Therefore, Defendants' motion to dismiss Vinson's claims for gender discrimination under Title VII as alleged in Count 3 of the complaint is due to be GRANTED.

## C.     Motion to Amend

In her brief in opposition to Defendants' motion to dismiss (Doc. #11), Vinson requests that, in lieu of dismissal, she be allowed to amend any deficient claims. The Court construes this request as a Motion for Leave to Amend (Doc. #11). Leave to amend should be freely given when justice so requires. Fed. R. Civ. P. 15(a)(2). However, a court is not obligated to grant a party leave to amend if such an amendment would be futile. *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001). In other words, leave to amend should be granted only if amendment would allow a plaintiff to salvage a viable claim.

In this case, the Court will allow Vinson leave to amend her § 1981 claim, if she so chooses, to sufficiently plead such a claim based on discriminatory pay, failure to promote to positions other than the Professional Development and Training position and the night HR manager position, and retaliation. However, this is the only claim that Vinson will be given leave to amend, as the Court finds that any amendment to her Title VII national origin and gender claims would be futile because Vinson has not exhausted her administrative remedies.

## V. CONCLUSION

Accordingly, it is hereby ORDERED as follows:

1.      Defendants' motion to dismiss (Doc. #8) Vinson's § 1981 claim (Count 1) is GRANTED to the extent it is based on discriminatory pay, failure to promote to any position other than Professional Development and Training and night HR manager, and retaliation, and these claims are DISMISSED WITHOUT PREJUDICE.  Defendants' motion to dismiss Vinson's § 1981 claim is DENIED in all other respects.

2.      Defendants' motion to dismiss (Doc. #8) Vinson's Title VII national origin claim (Count 2) is GRANTED to the extent it is based on discriminatory pay, failure to promote, and retaliation, and these claims are DISMISSED WITH PREJUDICE.

3.      Defendants' motion to dismiss (Doc. #8) Vinson's Title VII gender discrimination claim (Count 3) is GRANTED, and this claim is DISMISSED WITH PREJUDICE.

4.      Defendants' motion to dismiss (Doc. #8) Vinson's state law claims for negligent and wanton hiring/supervision, invasion of privacy, and intentional infliction of emotional distress (Counts 4–6) is GRANTED, and these claims are DISMISSED WITH PREJUDICE.

5.      Defendants' motion to dismiss (Doc. #8) Vinson's hostile work environment claims is DENIED AS MOOT.

6.      Plaintiff's Motion for Leave to Amend (Doc. #11) is GRANTED as to her § 1981 claim only; Plaintiff shall file an Amended Complaint no later than September 30,

2013, correcting the deficiencies of this claim, or her § 1981 claim based on discriminatory pay, failure to promote to positions other than the Professional Development and Training and night HR management positions, and retaliation will be dismissed with prejudice.

DONE this the 27th day of September, 2013.

_____/s/   Mark E. Fuller_____
UNITED STATES DISTRICT JUDGE

25