IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| MARIA N. VINSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO.  2:12-cv-1088-MEF |
| | ) | (WO – Do Not Publish) |
| KOCH FOODS OF ALABAMA, LLC, | ) | |
| KOCH FOODS, LLC, and DAVID | ) | |
| BIRCHFIELD, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant Koch Foods of Alabama, LLC ("Koch-Ala"), Koch Foods, LLC ("Koch Foods"), and David Birchfield's ("Birchfield") (collectively "the Defendants") Motion to Dismiss Plaintiff's Amended Complaint (Doc. #18).  The Court granted in part and denied in part the Defendants' first motion to dismiss Plaintiff Maria Vinson's ("Vinson") complaint.  (Doc. #13.)  In its Memorandum Opinion and Order on the Defendants' first motion to dismiss, the Court granted Vinson leave to file an amended complaint re-pleading additional facts relevant to her § 1981 claim in Count I.  (Doc. #13, at 24–25.)  Vinson filed an Amended Complaint, and the Defendants subsequently moved to dismiss for failure to state a claim for relief pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the reasons discussed below, the motion is due to be GRANTED IN PART and DENIED IN PART.

## I.  JURISDICTION AND VENUE

This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1331, 1343(a), and 1367.  Additionally, Defendants have not argued that the Court does not have personal jurisdiction over them.  Venue is appropriate pursuant to 28 U.S.C. § 1391.

## II. STANDARD OF REVIEW

In considering a Rule 12(b)(6) motion to dismiss, the court accepts the plaintiff's allegations as true and reads them in the light most favorable to the plaintiff.  *Duke v. Cleland*, 5 F.3d 1399, 1402 (11th Cir. 1993) (citation omitted).  Further, a district court must favor the plaintiff with "all reasonable inferences from the allegations in the complaint." *Stephens v. Dep't of Health and Human Servs.*, 901 F.2d 1571, 1573 (11th Cir. 1990).

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted).  A complaint states a facially plausible claim for relief "when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  A complaint does not state a facially plausible claim for relief if it shows only "a sheer possibility that the defendant acted unlawfully."  *Id.*  While a complaint need not contain detailed factual allegations to survive a Rule 12(b)(6) motion, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.* (internal quotation and citations omitted).  Absent the necessary factual allegations, "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" will not suffice.  *Id.*

2

Courts are also not "bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

### III. FACTUAL AND PROCEDURAL BACKGROUND

Since this case is before the Court on a motion to dismiss, the Court accepts the following allegations as true:

Vinson is a Hispanic female and her national origin is Puerto Rican. Vinson has an Associate's Degree in Arts and Communication and a Bachelor of Science in Human Resource Management. Vinson is also a U.S. Veteran and served in the Army, National Guard and Reserves, and was Honorably Discharged. Koch Foods owns and operates facilities at which it kills, processes, and packages chicken and byproducts, and it licenses Koch-Ala to use the name of "Koch Foods" for its Alabama operations. In October of 2009, Vinson took a position as an Orientation Trainer in the Human Resource ("HR") department at the Montgomery chicken processing facility of Koch-Ala. Birchfield is the Complex Human Resource Manager of Koch-Ala and oversees and manages its Montgomery facility.

During the course of her employment, Vinson applied for the position of Professional Development and Training. Lindsey Johnson, a white female, was hired for the position despite Vinson being more qualified and experienced. Vinson again applied for the position of Professional Development and Training, but the position was filled by Mason Melton ("Melton"), a white male who was less qualified than Vinson. A night HR Generalist position later became available. Birchfield did not initially post the position internally. Birchfield began interviewing for the position on March 14, 2012, and the HR Generalist

position was posted externally the same day.  After interviewing at least two candidates, Birchfield posted the HR Generalist position internally for three days and Vinson applied. On March 28, 2012, the position was offered to "Tracy", a white female, before Vinson was interviewed.  Tracy evidently declined the position, which remained unfilled throughout the rest of Vinson's employment.  After Vinson's termination, the HR Generalist position was filled by an Asian male who had no HR experience.

Another position became available for supply clerk, and three employees applied for this position.  Vinson asked Mitsi James ("James"), who was responsible for the position about the pay rate.  James said the position was $10.00 an hour.  Vinson was making $12.00 an hour at the time, so she did not apply for the supply clerk position because she did not want to take a pay cut.  None of the three applicants were hired.  The purchasing manager then provided an application for a friend of his, Ray Cleckler ("Cleckler"), at a higher rate of pay than posted.  Cleckler, who is a white male, was hired for the position at $15.00 per hour.  He had not worked at Koch Foods prior to his hire, and Vinson was more qualified than Cleckler.  Vinson complained to Ken German, HR Manager, about the change in pay and awarding the position to Cleckler to no avail.

On January 5, 2012, Vinson was one of three employees (two white females and Vinson) who were suspended for taking too long of a break off the clock.  The two white female employees were allowed to return to work on the fourth day, but Vinson was not allowed to return to work until the fifth day.  When Vinson returned to work Birchfield changed her job duties but not her job title.  This resulted in Vinson having no work station,

no work tools, and no job description.  Vinson was also removed from the decisionmaking process of the HR department, which was a significant change in her responsibilities from what they were prior to her suspension.  Vinson complained about the removal of her duties and subsequently had her orientation duties taken away and given to Daisy Philips Velez. The two suspended white female employees retained their original job duties and later received promotions.  One of the suspended white female employees was promoted to HR Generalist, a position that resulted in an increase in pay.  White HR employees and male employees were paid more than Vinson.

On May 17, 2012, Melton told Vinson that her job position was being eliminated and that there were no other jobs available.  She was then terminated and escorted off the premises.  At the time Vinson was terminated, there was an open HR clerk position.  The position was filled by "Lucas," an Asian male.

## IV.  DISCUSSION

Vinson filed her first complaint on December 14, 2012, and brought claims against the Defendants under 42 U.S.C. § 1981 for race discrimination (Count I), Title VII national origin discrimination (Count II), Title VII gender discrimination (Count III), and various state law claims (Counts IV–VI).  The Court granted the Defendants' motion to dismiss Counts III–VI, and also granted the Defendants' motion to dismiss Counts I and II to the extent they were based on discriminatory pay, failure to promote to any position other than Professional Development and Training and night HR manager, and retaliation.  (Doc. #13, at 24–25.)  The Court then granted Vinson leave to file an amended complaint on the

following narrow grounds:

> 6.      Plaintiff's Motion for Leave to Amend (Doc. #11) is
> GRANTED **as to her § 1981 claim only**; Plaintiff shall file an
> Amended Complaint no later than September 30, 2013,
> correcting the deficiencies of this claim, or her § 1981 claim
> based on discriminatory pay, failure to promote to positions
> other than the Professional Development and Training and night
> HR management positions, and retaliation will be dismissed
> with prejudice.[1]

(Doc. #13, at 24–25) (emphasis added).

Vinson filed an Amended Complaint on October 14, 2013, that added Birchfield as a defendant and alleged additional facts addressing promotions, discriminatory pay, and retaliation.  (Doc. #16.)  The Defendants' responded by filing a second motion to dismiss. (Doc. #18.)  Rather than limiting themselves to addressing the sufficiency of Vinson's new allegations, the Defendants move to dismiss the entire complaint as a shotgun pleading and move to dismiss all claims against Koch Foods on the grounds that Vinson does not allege she had an employment relationship with it and that she failed to exhaust her administrative remedies against it, defenses that were available at the time the Defendants filed their first motion to dismiss.

## A.      The Defendants' Failure to Consolidate Objections

The Defendants are prohibited by Federal Rule of Civil Procedure Rule 12(g) from

---

[1] The Court did not grant Vinson leave to re-plead her Title VII national origin discrimination claim because it concluded she was procedurally barred from asserting any Title VII national origin discrimination other than that based on her wrongful termination.  (Doc. #13, at 19–21.)  Therefore, any amendment to this portion of her complaint would be futile.

moving to dismiss Vinson's Amended Complaint in its entirety on the grounds that it is a shotgun pleading, from moving to dismiss the claims against Koch Foods because Vinson was not its employee, and from moving to dismiss the claims against Koch Foods due to failure to exhaust administrative remedies.   These objections were available to the Defendants at the time they filed their first motion to dismiss.   Rule 12(g)(2) states that "[e]xcept as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion."

The argument that Vinson's complaint should be dismissed in its entirety as a shotgun pleading was "a defense or objection that was available" to the Defendants when they filed their first motion to dismiss.   The features of the Amended Complaint that make it a shotgun pleading are identical to the features that made it a shotgun pleading in the original complaint, and thus the Amended Complaint does not present occasion for a new objection that was unavailable to the Defendants at the first motion to dismiss stage.   Likewise, the arguments that Koch Foods is not alleged to be the employer of Vinson and that Vinson failed to exhaust her administrative remedies against Koch Foods were available to the Defendants at the time they filed their first motion to dismiss because Koch Foods was named as a defendant in the original complaint.   (Doc. #1.)   Because the Defendants were required to join these defenses to their first motion to dismiss under Rule 12(g), the Court will not consider these arguments advanced in their second motion to dismiss.   *See Derisme v. Hunt Leibert Jacobson, PC,* No. 10-cv-244-MRK, 2010 WL 3417857, at *4–5 (D. Conn.

Aug. 26, 2010) (refusing to consider arguments on second motion to dismiss that were available to party at first motion to dismiss).[2]

## B.     Rule 12(b)(6)

The Defendants seek dismissal of Vinson's § 1981 clams in Count I for discriminatory pay, failure to promote to positions other than the Professional Development and Training and night HR management positions, and retaliation.  Birchfield argues that Vinson did not allege he was her employer and did not name him as a respondent in her EEOC charge and that her Title VII claim against him is thus administratively barred.  Birchfield also seeks dismissal of the Title VII claims against him in his individual capacity.  (Doc. #19, at 1–2.)

The Court notes that in her response to the Defendants' motion to dismiss, Vinson has submitted documents outside the complaint in support of her position.  In order to consider materials outside the complaint on a motion to dismiss, the Court would have to convert the Defendants' motion to a motion for summary judgment, which the Court declines to do.  *See*

---

[2] While the Defendants may not advance these arguments at this time because they were available at the time the Defendants filed their first motion to dismiss, the Defendants may assert them in the Defendants' answer, by a motion under Rule 12(c), or at trial.  Fed. R. Civ. P. 12(h)(2). The argument that Vinson is not an employee of Koch Foods and that she failed to exhaust her administrative remedies against Koch Foods may also be asserted at summary judgment.

That being said, even if the Court were to consider the Defendants' shotgun pleading argument, now or at a later date, it would not be well-taken.  Although the Amended Complaint suffers from technical defects, the purpose behind the Eleventh Circuit's shotgun pleading case law is to enable district courts "to define the issues at the earliest stages of the litigation."  *Johnson Enters. of Jacksonville, Inc. v. FPL Grp., Inc.*, 162 F.3d 1290, 1333 (11th Cir. 1998).  The Defendants cannot credibly maintain that the issues in this case are not defined after the Court's first Memorandum Opinion and Order, the filing of the Amended Complaint, and this Order.  While motions to dismiss serve as the procedural mechanism for narrowing the issues in a case, the filing of successive motions have diminishing value in this regard and threaten to unnecessarily delay the progress of litigation.

*Day v. Taylor*, 400 F.3d 1272, 1275–76 (11th Cir. 2005).  The Court will thus consider only the four corners of the Amended Complaint in ruling on the Defendants' motion to dismiss.

### 1.      Discriminatory Pay

In its first Memorandum Opinion and Order, the Court found Vinson's allegation that "[w]hite employees in Human Resources were paid substantially more than Plaintiff" was a conclusory statement insufficient to state claim upon which relief can be granted.  (Doc. #13, at 7–8.)  *See Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 976 (11th Cir. 2008) (holding that the statement in a complaint that plaintiffs "were 'denied promotions . . . and treated differently than similarly situated white employees solely because of [] race' . . . epitomizes speculation and therefore does not amount to a short and plain statement of their claim under Rule 8(a)") (citation omitted).  In her Amended Complaint, Vinson adds the allegation that she inquired into a supply clerk position and was told it paid $10.00 an hour.  (Doc. #16, at ¶22.)  She did not apply for the position because she was making $12.00 an hour at the time; however, a purchasing manager then provided an application for his friend, a white male, who was hired for the position at $15.00 an hour.  (Doc. #16, at ¶22.) The addition of this factual allegation is enough to raise Vinson's claim that white employees in HR were paid substantially more than Vinson above the speculative level.

Based on Vinson's allegations, it does not appear that the supply clerk position is a position that "shared the same type of tasks" as her HR position, which is a required element of a prima facie case of disparate pay.  *See Miranda v. B&B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1529 (11th Cir. 1992).   However, a "complaint need not allege facts sufficient

to make out a classic *McDonnell Douglas* prima facie case, [but] it must provide enough factual matter (taken as true) to suggest intentional race discrimination." *Davis*, 516 F.3d at 974 (internal quotations and citations omitted).  Vinson's factual allegation concerning pay disparity with respect to the supply clerk position is enough to suggest  intentional national origin discrimination, and raises her claim that white employees in HR were paid more than her (which does involve a claim of pay disparity among similar positions) above the speculative level.  Accordingly, Vinson states a claim upon which relief can be granted for disparate pay under § 1981 in Count I of her Amended Complaint, and the Defendants' motion to dismiss this claim is DENIED.

### 2.     Promotion

In its first Memorandum Opinion and Order, the Court held that Vinson stated § 1981 failure to promote claims for the Professional Development and Training position and the night HR manager position, but also held that the references to "other vacancies" that were not posted and that were filled by white males was too vague to state a claim.  (Doc. #13, at 8–10.)  The Defendants now move to dismiss the failure to promote claims in the Amended Complaint for any other position than the Professional Development and Training position and the night HR Generalist position.[3]  These positions are the supply clerk position and the HR positions held by Heather Bowen and Mitzi James, the two women who allegedly

---

[3] The night HR Generalist position is referred to in the first complaint as a "night HR manager position," (Doc. #1, at ¶15), but it is clear that this is the same position as the HR Generalist position in the Amended Complaint.  (Doc. #16, at ¶15.)

received disparate disciplinary treatment and went on to receive promotions.[4]

The Defendants move to dismiss Vinson's failure to promote claim based upon the supply clerk position because Vinson alleges that she did not apply for the position. *See Smith v. J. Smith Lanier & Co.*, 352 F.3d 1342, 1345–46 (11th Cir. 2003) ("A general interest in being rehired without submitting an application is not enough to establish a prima facie case of [] discrimination when the defendant-employer has publicized an open position."). Vinson argues her failure to apply falls under an exception to the requirement that a plaintiff must apply for the position that this Court applied in its first Memorandum Opinion and Order. (Doc. #23, at 13.) The Court applied the exception to the requirement that a plaintiff apply for a position outlined in *Carmichael v. Birmingham Saw Works* to Vinson's failure to apply for the night HR Generalist position. (Doc. #13, at 9–10.) *Carmichael* applies when an employee fails to apply for a position because the employer uses informal hiring procedures and the employer has some reason to know the employee is interested in the position. 738 F.2d 1126, 1132–34 (11th Cir. 1984). The Court applied *Carmichael* to a position that Vinson alleged in her first complaint was unposted. (Doc. #1, at ¶ 15.) By contrast, Vinson does not allege the supply clerk position was unposted. (Doc. #16, at ¶ 22.) In fact, she was aware of the position, inquired into it, and voluntarily chose not to apply for it. (Doc. #16, at ¶ 22.) Thus, the *Carmichael* exception for unposted, informally-advertised

---

[4] As the Defendants correctly note, Vinson identifies other individuals who allegedly received promotions as a result of discrimination, but those individuals are named for promotions for which Vinson has sufficiently plead failure to promote claims. (Doc. #24, at 11 n. 4.)

jobs does not apply to the supply clerk position.

Vinson argues that another exception applies to exempt her from the requirement that she allege she applied for the position. Vinson argues that applying would have been a futile gesture because her employer's promotion was on discriminatory grounds. (Doc. #23, at 13–14.) To qualify for this exception, Vinson must allege facts sufficient to show she had a "justifiable belief" that she had a real and present interest in the job, and that she would have applied but was deterred from doing so by the employer's discriminatory practices. *See EEOC v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1274 (11th Cir. 2002). Vinson's allegations do not qualify her for the futile gesture exception because she alleges she chose not to apply after she learned the position paid less than her current rate of pay. (Doc. #16, at ¶ 22.) Thus, although the allegation about the supply clerk position provides evidence of pay discrimination, as discussed above, Vinson cannot base a failure to promote claim on the supply clerk position because she does not allege she applied for the position.

As to the promotions Heather Bowen and Mitzi James received, the Court has already held that the allegations concerning promotions received by these two women were intended as support for Vinson's disparate disciplinary treatment claim rather than as separate failure to promote claims. (Doc. #13, at 8 n. 2.) The allegations in the Amended Complaint do nothing to affect this holding, and Vinson's arguments in her brief may not be used to amend her pleading. Accordingly, the Defendants' motion to dismiss Vinson's § 1981 failure to promote claims for positions other than the Professional Development and Training and night HR Generalist position is GRANTED.

12

### 3.      Retaliation

The Defendants have moved to dismiss Vinson's retaliation claims.  In its first Memorandum Opinion and Order, the Court held that Vinson failed to state a claim for retaliation because she did not allege she engaged in statutorily protected activity by complaining of *racially motivated* adverse employment actions.  (Doc. #13, at 10–11.)  In her Amended Complaint, Vinson alleges that she "complained to Ken German, HR Manager, about the change in pay" for the supply clerk position "to no avail," and that Vinson "complained" about being taken out of the decisionmaking and hiring process after her suspension.  (Doc. #16, at ¶¶ 23–24.)  Vinson has failed to cure the defect of her original complaint by alleging she opposed her employer's decisions on the basis that they were racially discriminatory.  *See Murphy v. City of Aventura*, 616 F. Supp. 2d 1267, 1280–82 (S.D. Fla. 2009) (dismissing retaliation claim in sexual harassment case because employee's complaints about city manager's conduct did not mention that he was sexually harassing her).  As a result, the Defendants' motion to dismiss Vinson's § 1981 retaliation claim in Count I of the Amended Complaint is GRANTED.

### 4.      Claims Against Birchfield

Vinson adds Birchfield as a defendant in her Amended Complaint.  Birchfield is the Complex Human Resource Manager for Koch-Ala and oversees and manages its Montgomery facilities.  (Doc. #16, at ¶4.)  The Defendants move to dismiss all claims against Birchfield on the grounds that Vinson does not allege Birchfield was her employer, and to dismiss her Title VII claims against him on the grounds that she failed to exhaust her

administrative remedies and that there is no individual liability under Title VII.

Birchfield is sued individually in Vinson's § 1981 claim in Count I. "Contrary to Title VII, 'individual employees can be held liable for discrimination under § 1981.'" *Moss v. W&A Cleaners*, 111 F. Supp. 2d 1181, 1187 (M.D. Ala. 2000) (quoting *Leige v. Capitol Chevrolet, Inc.*, 895 F. Supp. 289, 293 (M.D. Ala. 1995)). The only basis the Defendants provide for dismissing Vinson's § 1981 claim against Birchfield is that Vinson fails to plead any facts to demonstrate she had an employment relationship with him. (Doc. #18, at 2.) The Court is doubtful that this argument is even relevant. *See Moss*, 111 F. Supp. 2d at 1187 ("However, § 1981 does not contain a similar requirement [to Title VII] limiting liability to 'employers'."). Furthermore, Vinson clearly alleges she had "an employment relationship" with Birchfield because she alleges he made the very decisions she alleges were racially discriminatory. (Doc. #16, at ¶¶15, 19, 27.) Therefore, Vinson states a cause of action under § 1981 against Birchfield.

Vinson, perhaps inadvertently, includes claims against all Defendants in her Title VII national origin discrimination claim. (Doc. #16, at ¶39.) A plaintiff may not sue an employer in his individual capacity under Title VII. *See Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir. 1991). Vinson argues she is suing Birchfield under Title VII in his capacity as agent for the employer, Koch Foods and Koch-Ala. (Doc. #23, at 18.) But while an official capacity suit against an employer's agent under Title VII is proper, such a claim is unnecessary where the plaintiff has also sued the employer. "In other words, if a Title VII plaintiff names his or her employer as a defendant, any of the employer's agents also named

14

in the complaint may be dismissed from the action." *Moss*, 111 F. Supp. 2d at 1187 (citing *Marshall v. Miller*, 873 F. Supp. 628, 632 (M.D. Fla. 1995)). Accordingly, the Defendants' motion to dismiss Vinson's § 1981 claims against Birchfield in Count I is DENIED, and their motion to dismiss Vinson's Title VII claims against Birchfield in Count II is GRANTED.

## V. CONCLUSION

For the reasons stated above, it is hereby ORDERED as follows:

1.     The Defendants' motion to dismiss Vinson's complaint as a shotgun pleading, to dismiss Koch Foods due to failure to allege it is Vinson's employer, and to dismiss Koch Foods due to failure to exhaust administrative remedies is DENIED.

2.     The Defendants' motion to dismiss Vinson's § 1981 discriminatory pay claim in Count I of her Amended Complaint is DENIED.

3.     The Defendants' motion to dismiss Vinson's § 1981 failure to promote claims for positions other than the Professional Development and Training and night HR Generalist position is GRANTED.

4.     The Defendants' motion to dismiss Vinson's § 1981 retaliation claims in Count I of the Amended Complaint is GRANTED.

5.     The Defendants' motion to dismiss Vinson's § 1981 claims against Birchfield in Count I of the Amended Complaint is DENIED.

6.     The Defendants' motion to dismiss Vinson's Title VII claims against Birchfield in Count II of the Amended Complaint is GRANTED.

7.     The Defendants shall file an answer within fourteen days of the date of this

15

Memorandum Opinion and Order.

DONE this the 10th day of June, 2014.

_____/s/   Mark E. Fuller_____
UNITED STATES DISTRICT JUDGE