# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN  DIVISION

| | | |
|---|---|---|
| **MARIA N. VINSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **CIVIL ACTION NO.:** |
| **v.** | ) | |
| | ) | **2:12-cv-01088-ECM** |
| **KOCH FOODS OF ALABAMA,** | ) | |
| **LLC,** | ) | |
| | ) | |
| **Defendant.** | ) | |

---

## PLAINTIFF MARIA VINSON'S MOTION FOR A NEW TRIAL

---

Plaintiff Maria Vinson files this motion for a new trial pursuant to Federal Rule of Civil Procedure 59(a).  The judgment in favor of Defendant Koch Foods of Alabama, LLC, is due to be set aside, in its entirety, to correct clear error and to prevent manifest injustice.  Each of the below-enumerated grounds, standing alone, is sufficient to warrant the granting of a new trial.  Moreover, the cumulative effect of each ground demands such.

### Standard of Decision

Rule 59(a)(1)(A) of the Federal Rules of Civil Procedure provides that "[t]he court may, on motion, grant a new trial on all or some of the issues – and to any party – as follows: (A) after a jury trial, for any reason for which a new trial has heretofore

been granted in an action at law in federal court[.]" Fed. R. Civ. P. 59(a)(1)(A).  As a general matter, a motion for a new trial should be granted when, in the opinion of the district court, the "jury reached a seriously erroneous result or the verdict is a miscarriage of justice." *Hendrix v. Sterilite Corp.*, 742 F.Supp. 2d 1277, 1281 (N.D. Ala. 2010) (citing 12 James Wm. Moore et al., Moore's Federal Practice 59.13[2][f][i] (3rd ed. 2007)).

Courts may order a new trial when counsel engages in improper conduct during the trial. *BankAtlantic v. Blythe Eastman Paine Webber, Inc.*, 955 F.2d 1467, 1474 (11th Cir. 1992).  The standard for determining whether a jury verdict should be set aside as a result of misconduct of counsel is whether the conduct was "such as to impair gravely the calm and dispassionate consideration of the case by the jury." *Allstate Insurance Co. v. James*, 845 F.2d 315, 318 (11th Cir. 1988) (citation omitted). In particular, a district court may grant a new trial when counsel violates an order prohibiting the parties from mentioning prior dismissed claims.  *McWhorter v. City of Birmingham*, 905 F.2d 674 (11th Cir. 1990).

I.    **The Court Should Grant A New Trial Because Defendant's Counsel Violated The Court's *In Limine* Order.**

Prior to trial Defendant Koch Foods, along with David Birchfield, filed Joint Consolidated Motions *In Limine* Nos. 1-14.  (Doc. 235.)  Defendants' Thirteenth

Motion was to "Exclude Evidence, Argument, or Questioning Relating to Dismissed Claims." (Doc. 235, p. 23.) Defendants argued that any evidence related to her dismissed claims would be irrelevant under Federal Rules of Evidence 401 and 402.

Plaintiff filed a similar motion. (Doc. 230.) In her motion, Plaintiff sought to prohibit Defendants from making any reference to any claim or part of a claim which has been voluntarily dismissed or dismissed by the Court on motion or appeal. (Doc. 230, p. 6.) Plaintiff did not oppose Defendants' motion "provided the Defendants are prohibited from eliciting any evidence concerning said dismissed claims or commenting upon the dismissal of any such claims during opening statements or argument." (Doc. 245, p. 17.) Defendants did not object to Plaintiff's motion. (Doc. 244, p. 1.) However, Defendants opined that it appeared that Plaintiff "may try to introduce testimony or evidence related to her dismissed claims." *Id.* In particular, Defendants expressed concern that Plaintiff might try to introduce evidence related to her dismissed promotion claims. *Id.* at 1-2. Defendants reiterated their argument that any such evidence was irrelevant.

On January 11, 2019, this Court dismissed with prejudice all claims against Defendant Birchfield. (Doc. 247.) Then, later that same day, the Court entered its Order on the pending motions *in limine*. (Doc. 248.) The Court granted Plaintiff's motion and "prohibit[ed] the parties, their attorneys, or the witnesses from making

3

reference to any claim or part of a claim which has been voluntarily dismissed or dismissed by the Court on motion or appeal." (Doc. 248, p. 2.)

On February 6, 2019, Ms. Leonard was questioning David Birchfield on redirect about some items which had been raised during his cross-examination. Turning to Plaintiff's Exhibit 57 (Defendants Koch Foods of Alabama, LLC's and David Birchfield's Responses to Plaintiff's First Request For Production of Documents), Ms. Leonard asked if there was any objection to the exhibit before questioning Mr. Birchfield about it. Without objection, the exhibit was admitted. (Trial Transcript of David Birchfield, 02-06-2109, p. 183.) The following then transpired:

> Q. All right. Mr. Birchfield, I'm going to show you this. These are responses to requests for production of documents, which is where we would have asked for documents from the defendants in this case. And I want to look at the first request for production. The first request reads: Produce the complete hard copy and electronic personnel and human resources files of meta data from Maria N. Vinson -- a bunch of other people -- and it says including, but not limited to resume, application for employment, all employment contracts, promotions, all performance reviews, all disciplinary actions, all commendations, all raises, bonuses and awards, historical pay information, and

4

any and all payroll records or ledgers, all records reflecting the total compensation and benefits, including, without limitation, salary, commissions, bonuses, monetary and nonmonetary benefits and any written notes or comments made on each applicant for their complete employment with defendants and a copy of the front and back covers of all personnel files for the last ten years.

And would you agree that in response, the defendant produced the plaintiff's personnel file and payroll records?

A.    It says that we object to the request. I --

Q.    Look at the bottom?

A.    Am I reading that wrong or --

Q.    Would you agree the last sentence says and without waiving said objections, see plaintiff's personnel file and payroll records?

MS. WALKER: Your Honor, we would object to asking Mr. Birchfield about legal documents that his lawyers -- that the lawyers for his company used to exchange information with the plaintiff's lawyers.

(Transcript of 02-06-2019, p. 183.)

Ms. Leonard then asked to approach the Bench and the following discussion ensued:

183

THE COURT: Go ahead.

22 MS. LEONARD: Your Honor, I was going to begin by

23 telling you where I'm going so that you can understand where

24 this is going, because my ultimate concern with laying the

25 foundation is Mr. Birchfield was a party at the time these

184

1 requests were done. So they were done ostensibly by him,

2 because these requests were made to him.

3 My intent is to show that we've got Bates numbers one

4 through 60 -- I don't have it in front of me to have the end

5 number -- which is the personnel filed produced in response to

6 that. It did not contain the handwritten notes nor does it

7 contain the file jacket.

8 My next step was then going to go to his deposition

9 where we discussed the fact that the handwritten notes were

10 produced that day, well over a year after they responded to the

11 request for production.

12 I'm then going to go to the Bates number for the file

13 jacket to show that was produced after the notes were done.

14 These are things that were produced either during his last --

15 during his second deposition or afterwards. It's simply to show

16 to the Court our argument that's going to come later, which are

17 these are the document to defend that he made later. That's our

18 intent using it.

19 My concern is laying the foundation is that because

20 this was produced at a time Mr. Birchfield was a party, it opens

21 up all of the issues that were the subjects of the motions in

22 limine. With the Court knowing where I'm going now, I'm simply

23 going to give Mr. Birchfield the personnel filed and have him

24 stipulate that those documents are not in the personnel file

25 that was produced at that time.

185

1 MS. WALKER: Our response, Judge, is this. Number one,

2 Mr. Birchfield was named as an agent of Koch Foods as HR complex

3 manager. There's nothing to suggest anywhere that you would

4 have personally gone and retrieved any document to copy and send

5 to him to produce when, obviously, the lawyers see about that.

6 But it's true the lawyers rely on people to copy things and turn

7 them in. But there's no basis of his having personal knowledge

8 of that. And for her to be able to go through production

9 history like there when there hasn't been a motion to compel or

10 any sort of admission to admit -- this is years ago. And when

11 it was finally produced, because it was found to be on the back

12 of the document. And it was produced right away. There was

13 plenty of time for there to be additional discovery. There

14 would be question for admission or think of those tools that we

15 have in our quiver as lawyers, but not to come to court and then

16 admit even talking about it, put it in their own exhibit and

17 then try to deny it, which is what's happened here.

18 MS. BARLOTTA: And again --

19 THE COURT: We're only going to do one lawyer at a

20 time.

21 I think that the plaintiff has the right to

22 cross-examine him on the contemporaneous nature of the notes. I

23 understand that's what you're saying.

24 Will the defendant stipulate that they were not part of

25 what was initially produced with the caveat -- and I know you

186

1 have to speak to it --

2 Go ahead, because you were the attorney of record. Go

3 ahead, Ms. Barlotta.

4 MS. BARLOTTA: We just have a problem with this

5 because, again, all of the originals were made available for

6 inspection and copying. That's actually how they got the copy

7 of the file jacket, because when they came and inspected it,

8 they wanted us to cover the front and back of the file jacket.

9 And now they're using that to say that we didn't do something,

10 we falsified something. And this was all made available to them

11 during discovery. The original documents were made available

12 for inspection and copying.

13 So this idea or this argument that we have delayed or

14 produced something or fabricated something is disingenuous,

15 because they know that they were -- had access to all the

16 documents during discovery and they were able to request exactly

17 what they wanted in original format. And two, the witness

9

18 doesn't not have personal knowledge of it.

19 THE COURT: Slow down.

20 MS. BARLOTTA: The witness does not have personal

21 knowledge.

22 (The court reporter interrupts for clarification)

23 THE COURT: You need to speak up. Just slow down.

24 MS. WALKER: Give her a minute.

25 MS. BARLOTTA: The witness does not have personal

187

1 knowledge. This was all handled by counsel. I don't know how

2 she's -- I mean, what is he supposed to say to that? He wasn't

3 involved in any of it.

4 THE COURT: All right. This feels more to me like a

5 discovery dispute. If you want to cross-examine him on the

6 contemporaneous nature of the notes, you are free to do that.

7 MS. LEONARD: Okay.

8 THE COURT: I do -- I do have a problem with asking a

9 witness, with the discovery issues that may have arisen earlier

10 during litigation, because that's something that should have

11 been dealt with earlier.

12 MS. LEONARD: Well, and Your Honor, just to address

13 that issue, there wasn't something to bring to the Court's

14 attention. After this document was produced in Mr. Birchfield's

15 deposition, that's when we said we want to come in and see

16 things. That's when we see the file jacket. We don't know in

17 the notes in the file jacket were made after Mr. Birchfield's

18 deposition.

19 As is discussed in Mr. Birchfield's deposition -- which

20 I'm not going to go into this portion, but it's to give Your

21 Honor history -- there had been a case that preceded this one

22 that was tried in front of Judge Thompson. And in the middle of

23 the trial, Mr. Birchfield found documents that were very helpful

24 to the defendant's case. These notes appeared the day after

25 Mr. Birchfield gave his deposition. I'm in no way insinuating

188

1 counsel did anything wrong.

2 MS. WALKER: Right. We move to strike that.

3 THE COURT: Okay. Go ahead. She has a right to put

4 this on the record, her objection.

5 MS. LEONARD: But our concern is that repeatedly with

6 this witness documents or notes in his handwriting appear to

7 save the day after issues arise. And that is why we want to

8 explore that at this point.

9 THE COURT: And you can explore that with him through

10 testimony.

11 MS. LEONARD: Okay.

12 THE COURT: But I don't want to get into hashing out

13 earlier discovery disputes. You can ask him about that.

14 If you -- could you [referring to defense counsel]

15 stipulate that these notes were not produced with the initial

16 documents with the caveat that you [referring to plaintiff's

17 counsel] would stipulate that it's their contention that it was

18 an inadvertent --

19 MS. WALKER: Would you give me a second?

20 THE COURT: Sure.

21 (Off-the-record discussion)

22 MS. BARLOTTA: Judge, we think there's a risk here of

23 substantial prejudice for us stipulating about a ministerial act

24 that took place years ago. And if there had been any question

25 at the time -- and in particular, if there had been an argument

189

1 that the plaintiff wanted to make that Mr. Birchfield has

2 personally provided some erroneous document -- or the inference

3 here today is that he has fraudulently provided a document, to

4 which we take great umbrage and move to strike that

5 representation about another case. But while they can point to

6 Bates numbers all they want, this is not appropriate at this

7 time to try to divorce the back of the application from the

8 application. And they have it in their own exhibit.

9 You know, if they had separated those documents for

10 their exhibits to try to make a point of this, that might be a

11 different issue. But as the Court knows -- we discussed

12 yesterday -- they have the entire exhibit. Plaintiff's

13 Exhibit 2 is three pages because it's got the back of the

14 application where he took the notes. And it -- cross-examining

15 him about the notes, we agree is fair game. But it's not fair

16 to go back and then ask him to talk about a ministerial act or

17 ask us to stipulate to it.

18 MS. LEONARD: Your Honor, this may be a solution. I

19 can show Mr. Birchfield the certificate of service date on the

20 request for production. We then discussed in Mr. Birchfield's

21 deposition the fact that that document was produced on that day,

22 which was September 15th, 2015. I can go that route.

23 THE COURT: All right. I'm going to allow -- I don't

24 want to get into what the attorneys did. I don't think that's

25 an appropriate line of questioning for the witness about what

190

1 the attorneys did, particularly during discovery. If you want

2 to ask him the date he signed the interrogatory response and ask

3 him if he knows when you received the notes, I will allow that.

4 And then if you want to cross-examine him and ask him

5 about the notes, you're free to do that.

6 MS. LEONARD: May I also ask him -- because I don't

7 want to run afoul of your ruling. The day before the notes were

8 produced, Mr. Birchfield gave a long deposition where portions

14

9 of Ms. Vinson's personnel file with used. I do intend on asking

10 him would you agree that the day before there were documents

11 from her personnel file which were used in your deposition.

12 THE COURT: You can ask him about his deposition.

13 MS. LEONARD: Okay.

14 MS. WALKER: If I remembers it.

15 MS. LEONARD: Okay.

16 THE COURT: All right.

17 MS. LEONARD: Sounds good.

18 (Bench conference concluded)

(Trial Transcript, 02-06-2019, pp. 183-190)

One of the things that is evident from this exchange is that Ms. Leonard was

concerned that the use of Plaintiff's Exhibit 57 might run afoul of the Court's Order

on the motions *in limine* because the first page made reference to Mr. Birchfield as

a defendant:

19 My concern is laying the foundation is that because

20 this was produced at a time Mr. Birchfield was a party, it opens

21 up all of the issues that were the subjects of the motions in

22 limine. With the Court knowing where I'm going now, I'm simply

15

23 going to give Mr. Birchfield the personnel filed and have him

24 stipulate that those documents are not in the personnel file

25 that was produced at that time.

Counsel for Defendants appeared not be concerned about this issue, but focused on whether Plaintiff was trying to raise a matter which should have been resolved during discovery. Only later, after Ms. Leonard had questioned Mr. Birchfield about when he produced certain documents, did Ms. Walker raise any concern about the motion **in limine**:

196

MS. LEONARD: All I was going to do was ask him do you

12 know why it was produced that late. His answer is: I don't

13 know. And I was going to end there.

14 MS. WALKER: He said: I'm not sure.

15 MS. LEONARD: Okay. He can say I'm not sure.

16 THE COURT: My concern is this, is that if you want to

17 question the witness about the notes -- as we all know,

18 production is handled by the attorneys to a certain degree -- to

19 a large degree. And the production of documents by an attorney

20 might not be in the knowledge of the particular witness or

16

21 client.

22 So if you want to cross-examine him about the notes

23 to -- I understand what your concern is, is that they were not

24 contemporaneous, that they were after the deposition; correct?

25 MS. LEONARD: And Your Honor, this goes back to your

197

1 suggestion. All I'm really trying to establish is that they

2 were produced to us on September 16th, 2015.

3 THE COURT: Will you stipulate to that?

4 MS. WALKER: We don't mind stipulating to the date they

5 were produced.

6 THE COURT: And isn't that the fact that you're trying

7 to establish?

8 MS. LEONARD: Yes. Yes.

9 THE COURT: If that -- if that will be stipulated to,

10 then why don't we just stipulate to the date of production of

11 the notes in front of the presence of the jury and not question

12 the witness about the actions of his attorneys.

13 MS. LEONARD: That's perfect. That's all I wanted to

17

14 do.

15 THE COURT: All right. Well, let's do that. We will

16 stipulate to the date of the production of the notes, and we'll

17 not -- we'll not further get into the issues of timing of

18 discovery.

19 MS. WALKER: Well, Your Honor, clearly, the plaintiff

20 wants to use this stipulation to then say the application was

21 produced earlier and you didn't come up with these notes till

22 later or simply argue that to the jury. If that's the intent,

23 we should certainly have an opportunity to cross Mr. Birchfield

24 on that point. And so we would ask that the plaintiff be

25 required to at least ask him whether or not he made the notes

198

1 contemporaneously because that is, indeed, the issue, because

2 otherwise, they're trying to use the production issue to

3 insinuate and allow the jury to infer a fraudulent creation of

4 notes.

5 THE COURT: I understand that. And you will have an

6 opportunity, because you will have redirect.

7 MS. WALKER: All right.

8 THE COURT: So I will allow you to redirect. If you

9 want to address it at that time, you certainly can. But let's

10 go ahead and stipulate to the date of production.

11 And then Ms. Walker, you will have an opportunity get

12 up on redistrict to do whatever it is you need to do.

13 MS. WALKER: Thank you.

14 THE COURT: You're welcome. All right. We can --

15 well, I told the jury they'd have five more minutes, so --

16 MS. WALKER: Well, Judge, while we're outside of the

17 jury, we'd like to point out to the Court that plaintiff wanted

18 to introduce Exhibit 57, their exhibit. I don't know that we

19 objected to it. I imagine we did. It's the request for

20 production that's before the Court that also shows --

21 THE COURT: I'm sorry. Wait a second, Wanda, you're

22 saying it was admitted.

23 THE CLERK: It was admitted.

24 THE COURT: It's already been admitted.

25 MS. WALKER: Yes.

199

1 THE COURT: Go ahead.

2 MS. WALKER: We're pointing out to the Court that this

3 document references David Birchfield as a party, a former party

4 in the case.

5 MS. BARLOTTA: It's now in evidence.

6 MS. WALKER: It's now in evidence.

7 MS. LEONARD: That's why I was trying to move it

8 quickly across that. I don't have a problem if he's redacted

9 from -- from those. I don't plan on using that again to show to

10 anybody. So if we want to redact his name --

11 THE COURT: Well, the jurors will get to take the

12 exhibits in the back with them during deliberations. So you've

13 offered it and it's been admitted. If you want to agree among

14 yourselves in light of the motions *in limine* that you will

15 redact it to remove information indicating that Mr. Birchfield

16 was at one time a party to the lawsuit, I do not have a problem

17 with that.

18 MS. WALKER: We're fine with it the way it is, Judge.

19 THE COURT: All right. Do you withdraw the objection

20 to it? Well, do you -- I don't know --

21 MS. WALKER: It's already in evidence. We agreeing to

22 it.

23 MS. BARLOTTA: We didn't object to it.

24 THE COURT: All right. You have three minutes before

25 we bring the jury back in if you'd like to stretch or --

(Trial Transcript of 02-06-2019, pp. 196-199.)

At not time during the questioning of Mr. Birchfield about Plaintiff's Exhibit 57 did Ms. Leonard ask him about being a former defendant in the case, about Ms. Vinson's dismissed claims against him, or his status as a former defendant.  Further, the Court did not tell the parties that the mere introduction of Plaintiff's Exhibit 57 opened the door to a broad violation of the Court's *in limine* order.

And that is where matters stood until Friday, February 8, 2019, and the testimony of Maria Vinson.  At no time that day did either party ask Ms. Vinson about Plaintiff's Exhibit 57, her former claims against Mr. Birchfield, or the fact that she had dismissed him as a Defendant.  And, at the end of the day, Ms. Barlotta completed her examination of Ms. Vinson:

241

21

8 Q. Ms. Vinson, it's true that Mr. Birchfield never made any

9 discriminatory remarks to you about your -- about your race or

10 anything about being from Puerto Rico; correct?

11 A. Directly to me, no.

12 Q. And in fact, no Koch Foods manager ever made any

13 discriminatory remarks about your race or national origin.

14 A. I've heard discriminatory remarks, but not to me.

15 MS. BARLOTTA: One moment, Your Honor.

16 (Brief pause)

17 MS. BARLOTTA: Your Honor, we just want to make sure

18 that we've admitted Defense Exhibit 5, 30, 39, and 10.

19 THE CLERK: Are you admitting those?

20 MS. BARLOTTA: Yes, ma'am.

21 THE COURT: Is there any objection?

22 MS. HAYNES: I -- I need to look and see what those

23 are. It's like four exhibits. Can we just -- can we --

24 THE COURT: Yes. Oh, yes.

25 MS. HAYNES: Can we do this outside the presence of the

241

1 jury so we're not wasting their time?

2 MS. BARLOTTA: Sure. Nothing further for this witness.

3 We're just going to make sure we admitted the exhibits.

(Trial Transcript of February 8, 2019)

Nevertheless, on Monday, February 11, 2019, Ms. Barlotta made it known that she had some additional questions for Ms. Vinson.   After some preliminary questions about Ms. Vinson's interest in other positions with Koch Foods, the following occurred:

12

3 Q. I'd like to show you Plaintiff's Exhibit 57, what has been

4 entered as Plaintiff's Exhibit 57, which were requests for

5 production that you served on Koch Foods of Alabama and David

6 Birchfield. Do you see that?

7 A. Yes, ma'am.

8 Q. And the reason that those requests for production were

9 served on Koch Foods and David Birchfield is because in addition

10 to suing Koch Foods, you also sued David Birchfield in this

11 case; isn't that correct?

12 A. Initially, yes, ma'am.

23

13 Q. And you sued him for race discrimination; correct?

14 A. Yes, ma'am.

15 Q. And you dismissed your claims against him; correct?

16 A. It was discussed with the lawyer, and it was -- come to the

17 determination. Yes, ma'am.

18 MS. BARLOTTA: Your Honor, we ask the Court to take

19 judicial notice that David Birchfield was dismissed from this

20 action as a prevailing party.

21 THE COURT: Any objection?

22 MS. HAYNES: Yes, Your Honor.

23 THE COURT: All right. What's your objection?

24 MS. HAYNES: And we would need to be heard on sidebar

25 with regards to that.

13

1 THE COURT: All right. Come on up.

2 (Bench conference, as follows:)

3 MS. HAYNES: This was the subject of a motion *in limine*

4 that the Court ruled on that dismissed claims, dismissed

5 parties, were not to be discussed. And Ms. Barlotta has now

24

6 brought that into this case and violated the Court's order on

7 that. And based on Ms. Barlotta's comments to the -- to the

8 jury, we would move for a mistrial.

9 THE COURT: Okay. What's your response?

10 MS. BARLOTTA: Your Honor, we addressed this at sidebar

11 with the Court with -- after plaintiffs entered this exhibit and

12 noted that they had put in front of the jury that Mr. Birchfield

13 was a party and that they had opened the door on this. And you

14 said that the parties could redact his name if they wanted to,

15 and defendants declined. So this was addressed with the Court

16 prior to me bringing this up with the witness.

17 MS. HAYNES: And her comments should have been brought

18 to the Court -- we offered to redact the document. That could

19 have been fixed before the jury ever saw it. But she's now

20 violated the Court's order on that motion *in limine* where

21 Birchfield and the dismissed claims was not to be brought up.

22 MS. BARLOTTA: You said if you -- your ruling was that

23 if the parties opened the door, then that evidence would come

24 in. And it's our position that the plaintiffs opened the door

25 by presenting a nonredacted exhibit to the jury specifically

14

1 identifying Mr. Birchfield as a party, collectively, defendants.

2 THE COURT: All right. The nonredacted document does

3 have in issue in front of the jury that he was at one point a

4 party. But getting any further into discussions about how he

5 was dismissed and the effect that that has at this point for the

6 jury -- you're arguing that it's an adjudication on the merits.

7 And you're going to go -- say because he's not liable, the

8 company can't be liable? Are you going to make that argument to

9 the jury?

10 MS. BARLOTTA: Well, I think -- I think that it's just

11 since the plaintiff has opened the door and put in front of the

12 jury that he was a party, that there's a question there as to

13 why he's no longer a party. And so we think it's appropriate to

14 at least ask this witness what I asked and then for the Court to

15 take judicial notice. If the Court declines to take judicial

16 notice, then that's fine. I won't take it any further. But

17 again, I mean I -- your ruling was specifically if the

18 plaintiffs opened the door. And this was addressed at sidebar

19 that they had opened the door on this.

20 THE COURT: All right. I'm going to allow you -- well,

21 I think you've already mentioned to the jury he's been

22 dismissed. I don't want to get any further than that. I don't

23 take judicial notice of it.

24 MS. BARLOTTA: Okay.

25 THE COURT: It's a legal issue that the jury doesn't

15

1 need to hear about. The motion *in limine* did specify that we

2 would not discuss any dismissed claims or parties, from what I

3 remember. But the fact that the document -- that the plaintiff

4 introduced a document that shows that Birchfield had been a

5 party at one point opens the door enough for you to say he's

6 been dismissed but not go any further.

7 MS. BARLOTTA: That's fine, Judge.

8 MS. HAYNES: The exhibit had not been shown to the jury

9 that had his name. And we --

10 THE COURT: I think the front page was shown.

11 MS. BARLOTTA: Yes.

12 THE COURT: And in its current form they're going to

13 take it back into deliberations. They'll have it then

14 unredacted. If it's an exhibit that's been admitted, they'll

15 have it. So --

16 MS. LEONARD: Your Honor, we would then request in

17 order to cure any prejudice that may have been created by

18 Ms. Barlotta's question that implies that Mr. Birchfield didn't

19 do anything wrong that the jury be informed that the lawyers,

20 for strategic reasons or for the ease of streamlining the trial,

21 chose to let Mr. Birchfield out, that there was no determination

22 on the merits that he had not engaged in discriminatory conduct.

23 Because that's the impression that Ms. Barlotta's question and

24 statements in front of the jury leaves.

25 THE COURT: The dismissal --

16

1 MS. BARLOTTA: Well, my statement is not evidence.

2 That's why we asked the Court to take judicial notice that he

3 was dismissed as a prevailing party. But be that as it may, he

28

4 was dismissed as a prevailing party. So I don't think that we

5 can tell the jury that --

6 MS. HAYNES: But it was a legal argument. And the

7 witness didn't know anything about the legal arguments.

8 THE COURT: Well, the dismissal of Birchfield was an

9 adjudication on the merits. It just was legally speaking. The

10 fact that he's been dismissed has now been stated to the jury.

11 If you want me to give some sort of a limiting instruction, I

12 don't -- I don't want to reveal to the jury that you made a

13 strategic -- you can make that argument if you want to go on and

14 talk about it any further.

15 MS. LEONARD: Well -- and Your Honor, this is our

16 concern. Ms. Barlotta went here before approaching the Court to

17 get into this issue. And they never said that we opened the

18 door. They just said he is on -- he's listed on the front of

19 this exhibit. They never objected to these exhibits, which were

20 discovery requests that were also included, I believe, to Koch

21 Foods of -- or Koch Foods LLC, which is a dismissed party.

22 That's just the nature of what the documents are. But this is

23 something that could have been addressed.

24 When they brought up last week that Mr. Birchfield was

25 referenced on the first page of the RPDs, we offered to redact.

17

1 And I mentioned at that point, that's part of why that first

2 page I moved quickly past the Elmo so it wouldn't sink in with

3 the jury. They've now hung a bell on that to where, quite

4 frankly, if she hadn't mentioned it, it's not something that the

5 jury likely would have ever paid attention to. But now

6 Ms. Barlotta is raising a question within the jury's mind that

7 shouldn't be there. And it was actually the subject of their

8 motions *in limine*.

9 THE COURT: Well, regardless of whose motion it was, I

10 made a ruling on it. But we all have to live with our

11 decisions. The exhibit came in. I can't speculate as to

12 whether the jury would have paid any attention to it or not, and

13 I'm not going to. But at this point, I'm not going to take

14 judicial notice that it was an adjudication on the merits. I

15 think the best thing to do at this point is just move on to your

16 next question. And the longer we're up here, the more it

17 highlights it for the jury.

18 MS. BARLOTTA: I don't have any more questions. We're

19 done.

20 MS. HAYNES: Can we have an instruction to the jury

21 that her -- Ms. Barlotta's comments were improper and a

22 violation of the Court's order?

23 THE COURT: Well --

24 MS. BARLOTTA: Well, that's not accurate.

25 THE COURT: We did have the motion *in limine*. But the

18

1 document was introduced.

2 MS. BARLOTTA: And that was discussed with the Court

3 specifically where we raised the issue that they had put into

4 evidence a document showing Mr. Birchfield as a party. And Your

5 Honor said, well, yes, they've done that. And we did argue at

6 that time that they had opened the door with respect to his

7 being mentioned as a party. So this was addressed with the

8 Court at a sidebar. It was done in a proper manner. And my

31

9 comments are not in any way violative of any court order.

10 MS. HAYNES: Well, we would take exception to that --

11 THE COURT: All right. I --

12 MR. HAYNES: -- because it does violate the Court's

13 order.

14 THE COURT: Well, it would have if that document had

15 not been introduced showing him to be a party. So I think it

16 opens the door enough that they could specify that he had been

17 dismissed from the case. But I'm not going to take judicial

18 notice of it. I'm not going to take judicial notice of the fact

19 that it was an adjudication on the merits. You just move on to

20 your next question. I think at this point if we comment on it

21 any further, it would be a bigger problem for the plaintiff. So

22 I think we should just move on.

23 MS. WALKER: And motion is denied?

24 THE COURT: I'm sorry?

25 MS. WALKER: The motion for mistrial is denied?

19

1 THE COURT: The motion for mistrial is denied.

32

2 (Bench conference concluded)

(Trial Transcript of February 11, 2019.)

A number of things are evident from this transcript.  First, Ms. Barlotta knew, when she advised the Court that she had additional questions for Ms. Vinson after having already rested, that she intended to raise the issue of Ms. Vinson's previous claims against Mr. Birchfield. Second, Ms. Barlotta also knew that issue was the subject of a court order that "prohibit[ed] the parties, their attorneys, or the witnesses from making reference to any claim or part of a claim which has been voluntarily dismissed or dismissed by the Court on motion or appeal."  (Doc. 248, p. 2.)  Third, through the use of leading questions, Ms. Barlotta interjected information which was barred by this Court's *in limine* order.  And finally, Ms. Barlotta not only referenced Ms. Vinson's dismissed claims but proceeded, in front of the jury, to ask the Court "to take judicial notice that David Birchfield was dismissed from this action as a prevailing party."

While Ms. Barlotta later attempted to justify her conduct by claiming that her statement was not evidence, that does not explain why she did not seek permission from the Court before pursing this matter with Ms. Vinson.

Ms. Barlotta also argued that because Plaintiff had utilized an exhibit which tangentially referenced Mr. Birchfield as a defendant, Plaintiff had opened the door,

not only to statements that he had been dismissed, but also statements that Ms. Vinson's claims had been dismissed and that the Court had determined that he was a prevailing party. Indeed, Ms. Barlotta stated that the Court had ruled that if the parties opened the door, then that evidence would come in. No such ruling was made by the court concerning Plaintiff's Exhibit 57. At best, the Court concluded that the statement Mr. Birchfield had been dismissed was permissible. But Ms. Barlotta went well beyond that statement by informing the jury, indirectly, that he was a "prevailing party."

While the Court denied Plaintiff's oral motion for a mistrial, Plaintiff believes that defense counsel's misconduct in this matter was so severe as to justify a new trial. Plaintiff's Exhibit 57, while tangentially referencing Mr. Birchfield as a defendant, did not highlight that fact to the jury. What defense counsel did not only shined a spotlight on what would otherwise have been an innocuous statement on a legal pleading, but illuminated, in neon lights, the fact that Ms. Vinson had sued Mr. Birchfield, had dismissed those claims, and that the Court had determined that Mr. Birchfield was the prevailing party. And all of this was done, knowing that it could potentially violate a court order and without first seeking permission to pursue that route.

Informing the members of the jury that the individual responsible for the

corporate-defendant's unlawful actions had, himself been sued, that those claims had been dismissed, and the individual designated as the prevailing party, can send only one message to a juror. "Since Mr. Birchfield was sued, dismissed and made the prevailing party, he did not do anything wrong. Therefore, Koch Foods, through the actions of Mr. Birchfield, could not have done anything wrong." This is a powerful message which, once made to the jury, could not be overcome by the Plaintiff.

Further, there was no way for the Plaintiff to correct this error. Because of the *in limine* order, Ms. Vinson had no expectation that she would be asked about any dismissed claims and was not prepared to testify about why the claims against Mr. Birchfield had been dismissed. Indeed, she may not even have been able to explain all of the technical reasons that decision had been made. Plaintiff's request that the Court give a correcting instruction to the jury to ignore the statement, to point out that the statement was in violation of the court order, or to otherwise explain what defense counsel's statements meant, was denied. As a result, Defendant's conduct gravely impaired the calm and dispassionate consideration of Ms. Vinson's case by the jury and deprived her of a fair trial.

A jury trial is a complicated undertaking. Mistakes happen. Some are small, others are big. Plaintiff's counsel introduced an exhibit which, while implicating the Court's *in limine* order, was tangential and harmless. A small transgression at best.

35

There was no discussion of any dismissed claims or parties. Defense counsel, however, concluded that this was their opportunity to blow the door wide open, without seeking guidance from the Court before doing so.  This was improper and caused great harm to the Plaintiff.

**Conclusion**

Because of Defense counsel's improper conduct before the jury, the Court should set aside the verdict and the judgment entered on it, order a new trial, and impose the costs associated with a new trial upon defense counsel.

Respectfully submitted,

*/s/ Alicia K. Haynes*
Alicia K. Haynes
Charles E. Guerrier
Co-counsel for Plaintff

**HAYNES & HAYNES, P.C.**
1600 Woodmere Drive
Birmingham, Alabama  35226
Phone:  (205) 879-0377

Heather Newsom Leonard
**Heather Leonard, P.C.**
P.O. Box 43768
Birmingham, Alabama 35243

Co-counsel for Plaintiff

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 13th day of March, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Sharonda Fancher
Rachel V. Barlotta
Jennifer M. Bedsole
Baker Donelson Bearman Caldwell & Berkowitz PC
420 North 20th Street
Wells Fargo Tower, Suite 1400
Birmingham, AL 35203

Marion F. Walker
Fisher Phillips
2323 2nd Avenue North
Birmingham, AL 35203

*/s/ Charles E. Guerrier*
OF COUNSEL